IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH MONROE, :
:
    Plaintiff, : CIVIL NO. 4:CV-07-1327
:
v. : (Judge McClure)
:
KAREN HOGSTEN, *et al.*, :
:
    Defendants. :

## **MEMORANDUM**

April 27, 2009

Plaintiff Joseph Monroe ("Plaintiff" or "Monroe"), an inmate currently confined at the Allenwood Federal Correctional Institution ("FCI Allenwood") in White Deer, Pennsylvania, commenced this *Bivens*[1] action on July 23, 2007. Presently pending before the Court is Defendants' motion to dismiss, or in the alternative, for summary judgment. (Record document no. 32.) For the reasons set forth below, the motion will be granted.

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

**BACKGROUND**

Monroe names several groups of Defendants in his Complaint. First, he names Mayor Michael Bloomberg of New York City and the following employees at Monroe's prior place of confinement, the Metropolitan Correctional Center, New York City ("MCC New York"): Warden Marvin Morrison, Physician Assistant Gautam Patel, and Correctional Officers Linder and John Doe (hereinafter, "New York Defendants"). Next, he namesAlberto Gonzalez in his capacity at that time as United States Attorney General and in his individual capacity. Finally, Monroe names as Defendants various officials of the Federal Bureau of Prisons ("BOP") and FCI Allenwood.[2]

In his Complaint, Monroe alleges that, on September 27, 2002, while he was incarcerated at MCC New York, he was assaulted by Officer Linder, and Officer Doe failed to intervene. (Record document no. 1 ¶¶ 16-24, 39.) He alleges that, while he was being led back to his cell from the shower by Linder and Doe, Linder pushed him

---

[2]The BOP and FCI Allenwood officials named as Defendants are Karen Hogsten, Warden; Kevin Pigos, M.D., and James Brady, M.D., Medical Officers; Ronald Laino, Health Services Administrator; Dennis Hammond and James Metoyer, Assistant Health Service Administrators; James Reid, Ralph Roces, Michaeleen Powanda, and Lee Ann Eichensehr, Physician Assistants; Jennifer Maris, medical staff member; Barbara Cadogan, Regional Health Service Administrator; Joseph McCluskey, Senior Attorney; and Hank Sadowski, Regional Counsel.

down the stairs. (*Id.* ¶¶ 22-23.) Monroe claims that, as a result of the fall, he injured his lower back, hands, arms, and finger. (*Id.* ¶ 25.) In addition, Monroe alleges that, since his arrival at FCI Allenwood on July 12, 2005, he has received inadequate medical care for his lower back. (*Id.* ¶¶ 28-38.) In addition to compensatory and punitive damages, Monroe requests declaratory and injunctive relief. (*Id.* at 8-9.)

By Order dated October 30, 2007, this Court dismissed the claims against the New York Defendants as frivolous under 28 U.S.C. § 1915(e)(2)(B)(I) because the claims were based upon a September 27, 2002 incident, and thus, at the time Monroe filed his Complaint on July 23, 2007, they were barred by the applicable New York state three (3) year statute of limitations. (*See* Record document no. 12.) The Order directed service of the Complaint on Gonzalez and the BOP and FCI Allenwood officials named as Defendants (hereinafter "Defendants").

Following several requests for extension of time to respond to the Complaint, which were granted, on May 16, 2008, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. (Record document no. 32.) On May 30, 2008, Defendants filed a supporting brief (Record document no. 33), exhibits (Record document nos. 33-2, 33-3), and statement of material facts (Record document no. 34.) On July 10, 2008, Defendants filed a notice indicating that their motions and

3

supporting documents had not been successfully served on Monroe because he had been released from FCI Allenwood on a writ *ad testificundum* on April 21, 2008. (Record document no. 35.)  Defendants represented that they would re-attempt service of the documents on Monroe upon his return to FCI Allenwood.  On September 4, 2008, Defendants filed an amended certificate of service indicating that a recent check of BOP records indicated that Monroe was back at FCI Allenwood, and thus the brief and accompanying documents were mailed to him on that date.  (Record document no. 37.)

Because Monroe did not file any opposition to the motion, on December 16, 2008, this Court issued an Order granting him an opportunity to file his opposition to the motion within fifteen (15) days.  (Record document no. 38.)  Following a request for an extension of time to file his opposition, which was granted, Monroe filed his brief in opposition on February 13, 2009.  (Record document no. 41.)  On February 27, 2009, Defendants filed a reply brief.  (Record document no. 42.)  Accordingly, the motion is ripe for consideration.

**STANDARDS OF REVIEW**

**I.    Motion to Dismiss**

Defendants seek dismissal of Monroe's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) on the basis that it fails to state a claim upon which relief can be granted. In the alternative, Defendants seek summary judgment and have submitted evidentiary documents outside the pleadings in support of their motion. Federal Rule of Civil Procedure 12(d) provides:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The Court will not exclude the evidentiary materials accompanying Defendants' motion because Monroe was given a reasonable opportunity to present material relevant to the motion. (*See* Record document no. 40.) Accordingly, the Court will treat Defendants' motion to dismiss, or in the alternative, for summary judgment, solely as a motion seeking summary judgment.

## II. **Summary Judgment**

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

A party seeking the entry of summary judgment bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). However, the nonmoving party cannot do so merely by offering general denials, vague allegations, or conclusory statements; rather, the party must point to specific evidence in the record that creates a genuine issue as to a material fact. *Celotex*, 477 U.S. at 324; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999). In evaluating a motion for summary judgment, the court will draw all reasonable inferences from the evidence in the record in favor of

the nonmoving party. *Am. Flint Glass Workers Union v. Beaumont Glass Co.,* 62 F.3d 574, 578 (3d Cir. 1995).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Further, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.* at 255.

**DISCUSSION**

**I.     Statement of Facts**

Defendants' statement of material facts (Record document no. 34) and supporting materials[3] establish the following undisputed facts[4] material to the instant

---

[3]In support of their motion, Defendants submitted the Declarations of Susan Albert (Record document no. 33-2, Ex. 1) and Ronald Laino (*Id.*, Ex. 2), BOP records relating to Monroe's administrative tort claim (*Id.* at 5-13), and relevant portions of Monroe's medical records (*Id.* at 21-94; Record document no. 33-3).

[4]Monroe did not submit a separate statement of material facts responding to Defendants' statement in accordance with M.D. Pa. LR 56.1 as he was directed to do in this Court's December 30, 2008 Order (Record document no. 40). Monroe includes a section at the outset of his opposition brief entitled "Statement of Material Facts (Affidavit of Meritorious Claim(s))," but this section neither contains a statement of material facts responding to Defendants' statement nor references to the parts of the
(continued...)

Motion:

On September 27, 2002, Monroe was examined by PA Gautam Patel at MCC New York. (Record document no. 33-2, Chronological Record of Medical Care, at 58.) At the time of his examination, Monroe alleged that, "while he was coming down the stairs after having a shower, I slipped and hurt my hands and back." (*Id.*) The examination revealed swelling of the left ring finger with tenderness on flexion and abrasions of the right forearm and right thumb. (*Id.*) An x-ray of Monroe's left hand showed a negative result for an acute fracture or dislocation. (*Id.*, 9/30/02 Radiology Report, at 65-66.)

On October 1, 2002, Monroe was evaluated by an orthopaedic surgeon. (Record document no. 33-3, Consultant Findings, at 13.) An examination of Monroe's finger showed no swelling or tenderness and full range of motion. (*Id.*) An examination of Monroe's back revealed a "completely normal examination." (*Id.*)

On May 30, 2003, June 5, 2003, and June 10, 2003, Monroe was seen by Health

---

⁴(...continued)
record that support his statements. (*See* Record document no. 41 at 1-3.) Instead, this section contains a re-statement of allegations from the Complaint, new allegations, and argument. (*See id.*) Accordingly, all material facts set forth in Defendants' statement will be deemed to be admitted. *See* M.D. Pa. LR 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.")

Services staff at MCC New York for complaints of back pain. (Record document no. 34, Defendants' statement of material facts, ¶ 7.) Monroe also was evaluated for back pain by MCC New York medical staff on August 18, 2003, September 8, 2003, October 2, 2003, January 8, 2004, March 23, 2004, February 22, 2005, March 1, 2005, and June 2, 2005. (*Id.* ¶ 8.) X-rays taken of Monroe's back on June 16, 2003 and May 3, 2005 showed a normal lumbar spine. (Record document no. 33-2, Radiology Reports, at 63-64.)

On July 12, 2005, Monroe was transferred to FCI Allenwood. (Record document no. 34 ¶ 9.) On July 15, 2005, Monroe was examined for lower back pain which radiated to his left leg. (*Id.* ¶ 10.) An examination showed a decrease in his range of motion, and he was provided with Ibuprofen. (*Id.* ¶ 11.)

On November 30, 2005, Monroe was evaluated by medical staff for complaints of back pain radiating down his right side. (*Id.* ¶ 12.) He was prescribed Tegretol in place of Ibuprofen and Naproxen, and an MRI of the lumbosacral spine was requested. (*Id.* ¶ 13; Record document no. 33-2, Chronological Record of Medical Care, at 35.)

On December 12, 2005, Monroe was re-evaluated by medical staff on a follow-up basis for his back pain. (Record document no. 33-2 at 35.) During his visit, Monroe complained that the medication he had been prescribed (Tegretol) was

causing him rectal bleeding. (*Id.*) The Tegregtol was discontinued, and Elavil, an anti-depressant also used to treat chronic pain, was prescribed. (*Id.*; Record document no. 34 ¶ 15.) It was also noted during this visit that, because Monroe has a history of foreign metal objects in both eyes, the MRI would be placed on hold until x-rays could be completed of the orbits. (Record document no. 34 ¶ 16.)

On March 10, 2006, Monroe was evaluated by medical staff for complaints of low back pain with pain down his right leg. (*Id.* ¶ 17.) The examination showed tenderness of the lumbosacral area, and Monroe was provided with pain relief medication. (*Id.* ¶ 18; Record document no. 33-2 at 34.)

On May 7, 2007, Monroe was evaluated for complaints of a stiff back and pain in his right leg. (Record document no. 34 ¶ 19; Record document no. 33-2 at 29-30.) An examination revealed muscle tenderness of the lumbar region, full range of motion, equal strength of the lower extremities, normal reflexes, and a negative straight leg test. (Record document no. 34 ¶ 19.) Monroe was provided with Ibuprofen and educated on range of motion exercises. (*Id.* ¶ 20.)

On October 16, 2007, Monroe received an annual physical examination. (*Id.* ¶ 21.) On October 22, 2007, Monroe was evaluated by medical staff for pain in his lower back and inner thighs. (*Id.* ¶ 22.) Motrin was prescribed, and he was given an

idle pass for three (3) days. (*Id.*)

On November 23, 2007, Monroe was evaluated for lower pelvic and back pain. (*Id.* ¶ 23; Record document no. 33-2 at 21-25.) At this visit, Monroe reported that he had pain in his right buttock area with radiation to the left leg. (Record document no. 33-2 at 24.) Monroe reported that he was doing prone stretching and that the stretching helped him to be more mobile. (*Id.*) He was diagnosed with sciatic pain and treated with a tapering dose of Prednisone. (*Id.*; Record document no. 34 ¶ 24.) On January 14, 2008, Monroe had an MRI of the lumbar spine, which revealed an "unremarkable evaluation of the lumbar spine." (Record document no. 34 ¶ 25; Record document no. 33-2, MRI Report, at 21.)

## II. Analysis

### A. Statute of Limitations

#### 1. *Bivens* Claims

Monroe's excessive force claim already was dismissed as time-barred. (*See* Record document no. 12.) Defendants argue that Monroe's deliberate indifference claim also should be dismissed because the act that he complained of occurred on September 27, 2002, yet he did not file this *Bivens* action until July 23, 2007, almost five (5) years later. (*See* Record document no. 33 at 6-8.)

11

The Third Circuit Court of Appeals has determined that *Bivens* claims are subject to Pennsylvania's two-year statute of limitations for personal injury actions. *See Kost v. Kozakiewicz,* 1 F.3d 176, 189-190 (3d Cir.1993) (citing 42 Pa. Cons. Stat. Ann. § 5524); *see also Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers,* 855 F.2d 1080, 1087 n. 3 (3d Cir.1988). A claim accrues when a plaintiff knows or has reason to know of the injury which is the basis of the action. *Gentry v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. *Gordon v. Lowell,* 95 F.Supp.2d 264, 272 (E.D. Pa. 2000). Under *Gordon,* a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id.*

Thus, Monroe's *Bivens* claims against Defendants accrued when the facts which support those claims reasonably should have become known. Monroe's deliberate indifference claim against Defendants stems from events that occurred beginning upon his arrival at FCI Allenwood on July 12, 2005, and thus these claims were not barred by the applicable two-year statute of limitations at the time Monroe filed his Complaint on July 23, 2007.

### 2. **Federal Tort Claims Act Claim**

The Federal Tort Claims Act ("FTCA") grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. *See* 28 U.S.C. § 2675(a). The FTCA, 28 U.S.C. § 2671 *et seq.*, is a statutory waiver of sovereign immunity for tort claims. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). The FTCA allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, as the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. *Livera v. First Nat'l Bank*, 879 F.2d 1186, 1194 (3d Cir. 1989).

As a prerequisite to a suit under the FTCA, a claim first must be presented to, and denied by, the federal agency. The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). 28 U.S.C. § 2401(b) provides that tort claim actions must be presented to the appropriate federal agency within two years of accrual. If the claimant receives a final denial by the agency, he or she must file the FTCA action in federal district court "within six months of the date of mailing, by certified or

registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

In this case, Monroe filed an administrative tort claim, which was received by the Northeast Regional Office on April 5, 2004 and denied on September 21, 2004. (Record document no. 33-2, 9/21/04 Administrative Tort Claim denial letter, at 9.) However, because Monroe indicated that he did not receive the initial denial, on February 10, 2006, a second denial letter was mailed to Monroe. (*Id.* at 11.) On February 23, 2006, Monroe signed the "Acknowledgment of Receipt Denial of Tort Claim" form. (*Id.* at 14.) Accordingly, Monroe had until August 2006 to file an action raising his FTCA claim in this Court. *See* 28 U.S.C. § 2401(b). Because Monroe did not file this action until July 23, 2007, nearly one year after the expiration of the deadline to file his FTCA claim in this Court, his tort claim is time-barred and will not be considered here. The Court now will turn to an analysis of Monroe's inadequate medical care claim.

### B.     Inadequate Medical Care Claim

Monroe alleges that Defendants' failure to provide him with proper care, follow-up examinations, and treatment of his back injury, including physical therapy, constitutes deliberate indifference to his serious medical needs in violation of the

Eighth Amendment.  (*See* Record document no. 1 ¶ 42.)

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(I) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 841 (1994).  "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  Thus, a complaint that

15

a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." *Estelle*, 429 U.S. at 106. Moreover, a mere difference of opinion between the inmate and the prison's medical staff regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See McFadden v. Lehman*, 968 F. Supp. 1001 (M.D. Pa. 1997); *Young v. Quinlan*, 960 F.2d 351, 358 n. 18 (3d Cir. 1992).

In the instant case, the record establishes that Defendants are entitled to judgment as a matter of law as to Monroe's claim of deliberate indifference to a serious medical need. Contrary to Monroe's allegation in his Complaint that Defendants failed to provide him with proper care, follow-up examinations, and treatment of his back injury, including physical therapy, the evidence submitted by Defendants shows that Monroe received adequate medical care.

The record reflects that, at the time of his arrival at FCI Allenwood, Monroe's medical records reflected that the examinations of his back after his September 27, 2002 fall were normal. Specifically, several days after his fall, an orthopaedic surgeon examined Monroe's spine and noted that it was a "completely normal examination." (*See* Record document no. 33-3, Consultant Findings, at 13.) Monroe also had x-rays

16

of his back on June 6, 2003 and May 3, 2005 that revealed a "normal lumbar spine." (*See* Record document no. 33-2, Radiology Reports, at 63-64.) The record also reflects that, throughout his time at FCI Allenwood, Monroe was examined at regular intervals for complaints about his back, treated with pain medication, and educated about exercises to improve his range of motion. (*See* Record document no. 33-2, Chronological Record of Medical Care 7/12/05-12/12/07, at 3-21.)

Moreover, while it is true that the MRI that originally was requested by FCI Allenwood medical staff on November 30, 2005 did not occur until January 14, 2008, there is nothing in the record to suggest that the delay was deliberate on the part of Defendants. Rather, the record reflects that the test was placed on hold because Monroe had a history of foreign metal objects in both eyes. (*See* Record document no. 33-2, 12/12/05 notation, at 35.) Therefore, it was necessary to take x-rays of the orbits before an MRI could be performed. (*See* Record document no. 34 ¶ 16.) In addition, the record reflects that Monroe was not seen for complaints of back pain from March 10, 2006 until May 7, 2007, and thus, there would have been no reason for the MRI to occur during that time period. (*See* Record document no. 33-2 at 29-34.) When Monroe was examined on May 7, 2007, the record reflects that he agreed with the plan to treat with Ibuprofen and range of motion exercises. (*See id.* at 29.) It

17

was not until his October 22, November 21, and December 12, 2007 visits that Monroe reported a worsening of his back pain and the new symptom of pelvic pain, and thus, an MRI was performed on January 14, 2008. (*See id.* at 21-26.) When the MRI was performed, it revealed an "unremarkable evaluation of the lumbar spine." (*See id.* at 21.)

It is apparent from the arguments in his opposition brief that Monroe merely disagrees with the medical treatment he received inasmuch as he wanted stronger pain medication and a consultation with an outside orthopaedic doctor. (*See* Record document no. 41 at 1.) An inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993); *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir. 2004). Monroe has not submitted any evidence in response to Defendants' motion to show that an issue of material fact remains as to the adequacy of the medical care that he received. *See Celotex*, 477 U.S. at 324; *Matsushita,* 475 U.S. at 585-86. Therefore, Defendants are entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be granted. An appropriate Order will enter.

  s/ James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MONROE, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 4:CV-07-1327 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| KAREN HOGSTEN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

April 27, 2009

**AND NOW,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss, or in the alternative, for summary judgment (Record document no. 32) is **GRANTED**.

2. The Clerk of Court is directed to enter **JUDGMENT** in favor of Defendants.

3. The Clerk of Court is directed to **CLOSE** this case.

                                                       s/ James F. McClure, Jr.
                                                       JAMES F. McCLURE, JR.
                                                       United States District Judge